**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| USF INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:09-2510-CMC |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | ON MOTION FOR |
| D&J ENTERPRISES, INC. AND | ) | SUMMARY JUDGMENT |
| IDA LORD, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Through this declaratory judgment action, Plaintiff, USF Insurance Company ("USF"), seeks a determination as to whether it has a duty to defend and indemnify its insured, D&J Enterprises, Inc. ("D&J"), for claims asserted by D&J's customer, Ida Lord ("Lord"). According to her complaint, Lord was injured on D&J's premises when a third party, Phillip Watts ("Watts"), entered those premises with a handgun, intending to rob the establishment, and "accidentally" shot Lord in the head.

The matter is before the court on USF's motion for summary judgment. USF argues that coverage is excluded under the governing Commercial General Liability ("CGL") policy's express exclusion of claims arising from assault or battery. D&J opposes summary judgment, arguing that Lord's characterization of the shooting as accidental in her complaint causes her claims to fall outside the exclusion or, at least, to raise a genuine issue of material fact as to whether Lord's claims are covered.[1]

---

[1] Defendant Lord was held in default on December 2, 2009. The motion for summary judgment is, therefore, directed solely to Defendant D&J.

For the reasons set forth below, the court agrees that Lord's claims fall within the express policy exclusion of claims arising from an assault or battery. USF's motion for summary judgment is, therefore, granted.

**STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

**FACTS**

Defendant D&J runs a payday lending establishment under the business name "Cash on the Spot." Plaintiff USF insured D&J, including as to this business, under a CGL policy which covered the period July 1, 2007 to July 1, 2008. On June 19, 2009, Lord filed a lawsuit against D&J alleging that she was injured on D&J's premises on February 14, 2008, which falls within the coverage period, when Watts entered the premises with a handgun, intending to rob the establishment. Dkt. No. 7-2, ¶¶ 7-8 (Complaint in underlying action). Lord further alleges that Watts "accidentally" shot her in the head after he entered the establishment. *Id.* ¶ 9. No other details of the surrounding circumstances are provided.[2]

Upon receipt of the Complaint, USF issued a letter to D&J, in which it agreed to defend and indemnify D&J for the underlying lawsuit under a reservation of its rights to withdraw its defense if it determined that no coverage existed under the policy. Dkt. No. 7-3 at 3. USF then filed this action seeking a declaration that the CGL policy issued to D&J did not provide coverage due to the policy's "Assault and Battery Exclusion." This exclusion is found in a "COMBINED COVERAGE AND EXCLUSION ENDORSEMENT" and reads as follows:

X.      Assault and Battery Exclusion

This insurance does not apply to Bodily Injury or Property Damage arising from:

1.      Assault and Battery committed by any Insured, any employee of any Insured, or any other person;

---

[2] This leaves at least two potential interpretations of Lord's characterization of the shooting as accidental. First, she may mean that Watts did not intend to shoot anyone, despite engaging in an armed robbery. Alternatively, she may mean that Watts intended to shoot someone else but shot Lord by mistake. For reasons explained below, however, the particular nature of the "accident" is irrelevant.

3

2. The failure to suppress or prevent Assault and Battery by any person in 1. above;

3. Any Assault or Battery resulting from or allegedly related to the negligent hiring, supervision, or training of any employee of the Insured; or

4. [Assault or Battery] [w]hether or not caused by or arising out of negligent, reckless or wanton conduct by the Insured, the Insured's employees, patrons or other persons lawfully or otherwise on, at or near the premises owned or occupied by the Insured; or by any other person.

Dkt. No. 7-1 at 29.[3]

## DISCUSSION

Whether USF has a duty to defend and indemnify D&J is dependent, primarily, on the factual allegations of Lord's complaint. *See Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 666 S.E.2d 897 (S.C. 2008). As explained in *Collins Holding*:

> In action for a declaratory judgment, the obligation of a liability insurance company to defend and indemnify is determined by the allegations of the complaint. . . . If the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend. . . . In examining the complaint, a court must look beyond the labels describing the acts to the acts themselves which form the basis of the claim against the insurer.

666 S.E.2d at 899; *see also City of Hartsville v. South Carolina Mun. Ins. & Risk Financing Fund*, 677 S.E.2d 574, 579 (S.C. 2009) ("Although a determination of an insurer's duty to defend is dependent upon the insured's complaint, an analysis of this duty involves the allegations of the

---

[3] As written in the policy, the fourth subparagraph does not contain the limiting phrase "assault or battery." As D&J argues, however, failure to read this phrase into this subparagraph would cause it to exclude far more than is suggested by its placement in the assault and battery exclusion. Dkt. No. 30 at 4 (noting that, without this limitation, subparagraph four would be "so wide reaching . . . [as to] negate any coverage for any liability arising from any situation of negligence"). For purposes of this order, therefore, the court assumes without deciding that subparagraph four, like the other subparagraphs, is limited to injury arising from an assault or battery.

4

complaint and not the specifically identified causes of action. Moreover, an insurer's duty to defend may arise from facts outside of the complaint that are known to the insurer.").

Here, USF argues that its broad assault and battery exclusion (quoted *supra*) unambiguously excludes coverage of any claim which might be based on Lord's factual allegations and, consequently, relieves USF from any duty to defend Lord's action. *See generally B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999) ("an insurer has no duty defend an insured where the damage was caused for a reason unambiguously excluded under the policy"). USF relies, in particular, on a decision of the South Carolina Court of Appeals which found the intent to exclude all claims arising out of an assault and battery in a similar provision to be "unmistakeable." Dkt. No. 23 at 5-8 (discussing *Sphere Drake Ins. Co. v. Litchfield*, 438 S.E.2d 275 (S.C. App. 1993) ("*Litchfield*")).[4]

In *Litchfield*, the court was faced with a coverage dispute relating to claims by a patron, Litchfield, for injuries suffered on the insured's premises when the patron was assaulted by a customer and several of the insured's employees. *Litchfield*, 438 S.E.2d at 276. Litchfield's

---

[4] USF also cites a different case with a similar name, *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421 (E.D. Pa. 1999) ("*101 Variety*"), for the purpose of distinguishing it from the present situation. This has caused some confusion in the memoranda as D&J confuses the two cases when it argues that "*Sphere Drake*," is distinguishable by referring to facts present only in *101 Variety* (a case which USF cited only for the purpose of making a distinction). *See* Dkt. No. 30 at 4 (incorrectly asserting that "Plaintiff cites to *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421 (E.D. Pa. 1999) as applicable to the underlying factual scenario."). In any event, for reasons discussed in the remainder of this order, the court does not find the distinction suggested by D&J to be significant (even had *101 Variety* found coverage) given the circumstances under which the alleged "accidental" shooting in this case occurred–in the course of an armed robbery. *See* Dkt. No. 30 at 4 (arguing that *101 Variety* distinguishable from the present case because it involved an individual injured when a police officer "willfully discharged his weapon inside [a] bar"). The decision in *101 Variety*, that there was coverage, also turned on other considerations not present in this case, including the policy's failure to exclude claims for negligence and application of collateral estoppel.

5

complaint included claims for assault and battery, as well as negligence claims based on failure to protect customers, failure to provide adequate security devices, failure to properly train and supervise employees, and negligent hiring. *Id*., 438 S.E.2d at 277. The exclusion at issue in *Litchfield* provided as follows: "Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes claims arising out of Assault and Battery, whether caused by or at the direction of, the insured, his employees, patrons of [sic] any cause whatsoever." *Id.*, 438 S.E.2d at 277. Finding that the exclusion barred coverage of Litchfield's claims, the court described this language as "readily understandable" and its intention to exclude the claims, regardless of who was involved or the theory advanced, as "unmistakable." *Id*., 438 S.E.2d at 277.

D&J argues that *Litchfield* does not control because Lord alleges that the shooting was accidental. The court agrees that Lord's characterization of her shooting as accidental presents a distinction from the facts in *Litchfield*. Ultimately, however, the court concludes it is a distinction without a difference given the circumstances under which the alleged "accident" at issue in this case occurred: in the course of an armed robbery. Under these circumstances, any shooting of a person other than the perpetrator constitutes an assault and battery as a matter of law.

As D&J acknowledges, an "assault" is "an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct." Dkt. No. 30 at 2 (citing *In re McGee*, 299 S.E.2d 334, 334 (S.C. 1983))[5]; *Gathers v. Harris Teeter Supermarket, Inc.,* 317 S.E.2d 748, 754-55 (S.C. App. 1984)). A "battery," on the other hand, "is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient." *Id*. at 3 (quoting *Gathers*, 317 S.E.2d

---

[5] The direct quote from *McGee* is as follows: "The crime of assault has long been defined as an unlawful attempt or offer to commit a violent injury upon the person of another, coupled with a present ability to complete the attempt or offer by a battery." *Id*. at 334.

6

at 754-55). Citing an older case, D&J asserts that willfulness is also an element of the offense of battery. *Id.* (citing *Smith v. Smith*, 9 S.E.2d 584, 589 (S.C. 1940)).[6] More recent cases, however, suggest that intent is not a necessary element of the civil offense of assault and battery. *See Mellen v. Lane*, 659 S.E.2d 236, 244 (S.C. App. 2008).[7]

Even if some level of intent or willfulness was required to support a claim for assault or battery, it would not end the inquiry given that Lord alleges that Watts entered D&J's premises with a handgun, intending to commit a robbery. For reasons discussed below, the court concludes these criminal actions are sufficient to satisfy any intent element which may be required.

The present case presents questions of civil, not criminal, law. Consideration of South Carolina's criminal law is, nonetheless, instructive because it establishes that an assault or battery which occurs during the commission of a felony is not excused even if "accidental." As explained below, a lack of intent to cause injury under such circumstances might reduce the offense from the

---

[6] The cited case actually speaks in terms of "intent" to cause harm, including this reference in a discussion of the general elements of the offense as stated in American Jurisprudence. The issue before the court was whether poisoning by trickery constituted a battery. The court concluded that it did.

[7] As explained in *Mellen*:

> "There is a well recognized distinction between criminal assault and a civil action for an assault and battery. In civil actions, the intent, while pertinent and relevant, is not an essential element. The rule, supported by the weight of authority, is that the defendant's intention does not enter into the case, for, if reasonable fear of bodily harm has been caused by the conduct of the defendant, this is an assault."

*Id.* (quoting *Herring v. Lawrence Warehouse Co.*, 72 S.E.2d 453, 458 (S.C. 1952)).

7

highest to the second highest level of assault. It would not, however, result in treatment of the injury as an accident.

In the criminal context, "South Carolina recognizes three levels of assault: the offense of simple assault and battery, the offense of assault and battery of a high and aggravated nature (ABHAN), and the offense of [assault and battery with intent to kill (ABIK)]." *State v. Fennell*, 531 S.E.2d 512, 516 (S.C. 2000). While the particular intent motivating the assault may distinguish between the level of assault with which a defendant is charged, a claim that no injury was intended will not avoid criminal liability when one person injures another in the course of a felony. *See generally State v. Coleman*, 536 S.E.2d 387, 389 (S.C. App. 2000) (noting distinctions between ABIK and ABHAN). As explained in *Coleman*, ABHAN does not require proof of specific intent to kill, as does ABIK, instead, it is sufficient that one commits a "violent injury accompanied by circumstances of aggravation." *Id*. The circumstances of aggravation may "include the *use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony*, great disparity between the ages and physical conditions of the parties involved, and the difference in the sexes." *Id.* (emphasis added).[8]

---

[8] South Carolina criminal law regarding murder and manslaughter charges is similar in that a person who unintentionally injures another while in the course of committing a felony or other activity "naturally tending to cause death or great bodily harm" is not entitled even to a charge of the lesser included offense of involuntary manslaughter, much less to relief from criminal liability. *See State v. Reese*, 633 S.E.2d 898, 900-01 (S.C. 2006) (finding no entitlement to a involuntary manslaughter charge where defendant, even if intending only to injure himself, was committing the felony of pointing or presenting a firearm at the time the death occurred), *reversed, in part, on other grounds State v. Belcher*, 685 S.E.2d 802, 810 (S.C. 2009) ("overruling all cases involving a homicide or a charge of assault and battery with intent to kill where two factors co-exist: (1) approval of the jury instruction that malice may be inferred from the use of a deadly weapon; and (2) evidence was presented that, if believed, would have reduced, mitigated, excused or justified the homicide or the charged [ABIK]")); *State v. Young*, 459 S.E.2d 84, 87-88 (S.C. 1995) (finding the defendant was not entitled to a charge of involuntary manslaughter despite his statement that the gun

Lord's complaint alleges the first three of these factors were present–use of a deadly weapon, infliction of serious bodily injury, and intent to commit a felony. Thus, under the facts alleged by Lord, Watts' actions constituted the criminal offense of assault and battery of a high and aggravated nature even if he did not actually intend to injure anyone. This is clearly more than is required for Lord's claims to fall within the policy's assault and battery exclusion.

Even if Watts' actual intent was relevant, it would be enough that he intended to commit an assault or battery on someone, not that Lord was the specifically intended target. *See Fennell*, 531 S.E.2d at 516 (affirming application of doctrine of transferred intent to conviction for ABIK where defendant killed the intended victim and also injured an unintended victim). Watts actions in entering D&J's premises with a firearm, intending to commit a robbery, establish at least his intent to commit an assault (the threatened use of the firearm in order to effect the robbery). That the intended assault may have been directed primarily or solely D&J's employees is irrelevant. The same intent is "transferred" to others present, including Lord. Thus, under the doctrine of transferred intent, Watts' assault on Lord was, as a matter of law, intentional rather than accidental.

In summary, Lord's characterization of the shooting as "accidental" must be read in the context of the remainder of her allegations. Those allegations establish that the claimed "accident" occurred during the commission of an armed robbery. As a matter of state law, Watts' display of the firearm during the course of this robbery was an assault on all present and his shooting of Lord

---

"just went off" because his statement also indicated *he was committing the felony of armed robbery at the time of the shooting*) (emphasis added); *State v. Goodson*, 440 S.E.2d 370, 372 (S.C. 1994) ("For homicide to be excusable on the ground of accident, it must be shown that the killing was unintentional, *that the defendant was acting lawfully*, and that due care was exercised in the handling of the weapon.") (emphasis added).

9

was a battery (in fact, the acts alleged constitute an assault and battery of a high and aggravated nature, not merely a simple assault and battery). It follows that Lord's claims are excluded from coverage under the broad and unambiguous assault and battery exclusion in USF's policy.

## CONCLUSION

For the reasons set forth above, the court grants Plaintiff's motion for summary judgment as to Defendant D & J Enterprises, Inc. in full.

Defendant Ida Lord is in default. The Complaint seeks attorneys fees' against both defendants. Because Plaintiff included a demand for attorneys' fees in the complaint but did not address this demand in its motion, the court cannot enter judgment at this time. Plaintiff is, therefore, directed to file a memorandum no later than **Friday, June 18, 2010**, addressing whether it is pursuing attorneys' fees against one or both Defendants and, if so, the legal basis for imposition of such an award against the Defendant against whom the award is sought. Defendants shall have fourteen (14) days from the filing date of Plaintiff's memorandum, if any, to file a response.

**IT IS SO ORDERED**.

    s/ Cameron McGowan Currie
    CAMERON MCGOWAN CURRIE
    UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 3, 2010